NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.B. AND D.B. AS GUARDIANS AD LITEM OF M.B.  <br><br>Plaintiffs/Counterdefendants,  <br><br>v.  <br><br>WATCHUNG HILLS REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION  <br><br>Defendant/Counterclaimant. | Hon. Stanley R. Chesler, U.S.D.J.  <br><br>Civ. No. 05-4722 (SRC)  <br><br>**AMENDED OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on cross-motions by the Plaintiffs and the Defendant for Summary Judgment (docket items # 5 and 9). The Court having considered the papers submitted by the parties, and for good cause shown, **GRANTS** the Plaintiffs' Motion (docket item #5) and **DENIES** the Defendant's Cross-Motion (docket item # 9) for the reasons set forth below.

### I. BACKGROUND

This Individuals with Disabilities Education Act ("IDEA") case concerns reimbursement for the costs incurred with the unilateral placement of Defendant M.B. at the Maplebrook School ("Maplebrook"). The issue has not been fully adjudicated at this time, and remains before an

1

Administrative Law Judge ("ALJ") for factual findings.  The motions before this Court are an interlocutory appeal of a decision from the ALJ, Judge Daniel B. MeKeown, issued August 15, 2005, partially granting summary judgment to Watchung Hills Regional School District ("WHRSD") Board of Education and denying reimbursement for M.B.'s placement at Maplebrook for the 2003/04 and 2004/05 school years.  In his decision, the ALJ held that the Plaintiffs lack any right to reimbursement for their unilateral placement of M.B. for these years under the Individuals with Disabilities Education Act ("IDEA") on the grounds that, because "M.B. has never previously received 'special education' and 'related services' from [WHRSD], and since 20 U.S.C. § 1412(a)(10)(C)(ii) provides that where a child has not previously received special education and related services from a public agency, there is no authority to reimburse the tuition expenses arising from the parent's unilateral placement of the child in private school." (ALJ Opinion at 15.)  This decision, however, "does not preclude the parents from pursuing their due process petition seeking determinations that [WHRSD's] proposed program and placement for M.B. are inappropriate, and that the appropriate program and placement for M.B. is the Maplebrook School . . . ." (Id. at 14.)

On or about November 17, 2005, M.B.'s parents filed a motion for summary judgment with this Court seeking reversal of the ALJ's decision that bars the Plaintiffs from seeking reimbursement for their unilateral private placement of M.B. for the 2003/04 and 2004/05 school years under the IDEA and applicable case law.  WHRSD filed a cross motion for summary judgment with this court on or about December 20, 2005, seeking affirmation of the ALJ's decision with respect for reimbursement for the costs incurred in connection with the unilateral

placement of M.B. at Maplebrook for the 2003/04 and 2004/05 school years, and reversal of the ALJ's decision that allows the Plaintiffs to proceed with a prospective claim for the costs of M.B.'s placement at Maplebrook.

A.   **Individuals With Disabilities Education Act, 20 U.S.C. 1400** *et seq.*

The Individuals with Disabilities Education Act ("IDEA") is the vehicle created by Congress to ensure states follow a mandate to provide a "free and appropriate education" ("FAPE") to all disabled children. 20 U.S.C. §1412. "Educational instruction specially designed to meet the unique needs of the handicapped child," coupled with services "necessary to permit the child to 'benefit' from the instruction" constitute a FAPE. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995).

For each child identified as eligible for special education, a written statement called an Individual Education Program ("IEP") is developed. The IEP, which addresses and includes several elements as provided under 20 U.S.C. §1414(d)(1)(A), is designed to ensure implementation of a FAPE for the child. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 264 (3d Cir. 2003). In addition to defining the content required, IDEA provides that an IEP should be developed considering the strengths of the child, concerns of the parents, and recent evaluations of the child. Id. The team responsible for developing the IEP consists of the child's parent(s), at least one of the child's special education teachers, a curriculum specialist and, if the parent or school board requests, a person with special knowledge or expertise related to the child's education. Id.; see also 20 U.S.C. §1414(d)(1)(B). IDEA further mandates that the team

review the IEP annually "to determine whether the annual goals for the child are being achieved." 20 U.S.C. §1414(d)(4).

Under IDEA, as well as the New Jersey regulations adopted to implement it, there exists a strong preference for 'mainstreaming,' in other words, requiring education in the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A). The Third Circuit has interpreted this requirement to mean "mandating education 'in the least restrictive environment that will provide [the student] with a meaningful educational benefit.'" S.H., 336 F.3d at 265 (quoting T.R. v. Kingwood Twp. Bd. Educ., 205 F.3d 572, 578 (3d Cir. 2000)). "The least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." Carlisle Area Sch. v. Scott P., 62 F.3d 520, 535 (3d Cir. 1995).

IDEA does not require that a school district maximize a student's potential or provide the best possible education. Rather, the statutory obligation is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982). The IEP must provide "meaningful" access to education, id. at 192, and confer "some educational benefit" upon the child. Id. at 200. In order to be appropriate, however, this educational benefit must be more than "trivial." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). An appropriate IEP is "gauged in relation to the child's potential," and must offer the potential for "significant learning" and "meaningful benefit." Id.

When a parent believes a school district has not provided their child with a FAPE as required under IDEA, he or she may object to the IEP and request a due process hearing or a mediation conference. See Lascari v. Bd. of Educ., 116 N.J. 30, 36 (1989) (citing applicable New Jersey state regulations). The parent(s) need only place the appropriateness of the IEP at issue, shifting the burden to the school district to prove that the IEP was indeed appropriate. However, the focus of this inquiry is on "the IEP actually offered and not one that the school board could have provided if it had been so inclined." Id. at 46.

In a situation where a child has been unilaterally placed by his or her parents in an educational setting contrary to the IEP, they may still be entitled to reimbursement, but only if the school district "fails to meet its burden of establishing the appropriateness of its program and if the parents demonstrate they have acted in good faith." Id.; see also 20 U.S.C. § 1412(a)(10)(C)(ii). In essence, if the school district fails to show that it offered the student a FAPE, the burden shifts back to the parents to establish that they unilaterally placed their child in an appropriate program. Once an ALJ issues a final order following a due process hearing, the aggrieved party may appeal that decision to a state court of competent jurisdiction or the federal district court. 20 U.S.C. § 1415(c)(2).

**B.     Current Dispute**

M.B. is currently nineteen years old, born on September 1, 1986. From a speech and language evaluation conducted in October 1990, it was recommended that she be placed in a self-contained classroom when she began her formal education. In June 1992, M.B. was first referred

to the Warren Township School District ("WTSD") Child Study Team ("CST") to plan for her attendance at kindergarten.  The CST classified M.B. as neurologically impaired and placed her in a self-contained class for half the school day, and in regular class for the other half.  In addition, the CST ordered that M.B. receive speech and occupational therapy.  For the 1993-94 school year, M.B. attended a first grade class for perceptually impaired children in the Warren Township school district for all her academic instruction.

M.B. was re-evaluated by the CST in May 1995.  Based on this re-evaluation, an IEP was proposed and implemented for the 1995/96 and 1996/97 school years.  M.B.'s parents also had a comprehensive analysis of their daughter done by the Lewis School in Princeton, New Jersey.  The evaluation by the Lewis School diagnosed M.B. with multi-sensory learning difference, characteristic of dyslexia with primary weakness in auditory processing, short-term memory, immediate recall, auditory motor integration, and visual-motor integration.  An IEP conference was held in May 1997 to plan for M.B.'s fifth grade year, and the WTSD's CST recommended that she be placed in a self-contained classroom for academics and be mainstreamed for all special subjects.  Because M.B.'s parents did not feel that this was appropriate for their daughter, they enrolled her at the Lewis School for the 1997/98 school year.  M.B. attended the Lewis School, at her parents' expense, for the 1997/98 through the 2002/03 school years.  M.B.'s parents did not seek reimbursement from WTSD for M.B.'s attendance at the Lewis School.

WHRSD administers Watchung Hills Regional High School, the local high school that serves children from WTSD, and students are automatically transferred from WTSD to WHRSD upon reaching high school.  In March 2003, M.B.'s parents informed WHRSD that they wished

to re-enroll their daughter in the high school for eleventh grade, and sought to have her referred to a CST for evaluation for an appropriate educational placement. WHRSD conducted evaluations in May and June of 2003, and on June 20, 2003, M.B. was classified by the WHRSD CST as multiply-disabled and eligible for special education and related services. A proposed IEP was offered on July 2, 2003, recommending that M.B. be placed in a self-contained learning disabled class for all her academic subjects, daily developmental reading and expository writing instruction, and three thirty minute sessions per week of individual speech and language therapy. M.B.'s parents did not feel that the proposed IEP sufficiently addressed their daughter's needs and, on July 3, 2003, they notified WHRSD that they were enrolling their daughter at Maplebrook for the 2003 summer session. M.B. attended Maplebrook and for the 2003/04 and 2004/05 school years, and remains currently enrolled there.

On June 29, 2005, M.B.'s parents filed a Petition for Due Process requesting reimbursement from WHRSD for expenses related to their unilateral placement of M.B. at Maplebrook. WHRSD moved for summary judgment, requesting that the ALJ bar the Plaintiffs' claim for reimbursement. The ALJ partially granted WHRSD's motion, denying M.B.'s parents reimbursement for the 2003/04 and 2004/05 school years, but allowing M.B.'s parents to proceed with their challenge to the IEP offered by WHRSD and to seek prospective placement of their daughter at Maplebrook.

## II. STANDARD OF REVIEW

The motions before the Court are cross-motions for summary judgment, although they are

essentially appeals of the ALJ's decision. In considering whether to affirm administrative findings, this Court must first determine the proper weight to accord the ALJ's decision. "[J]udicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential standard of review." Susan N., 70 F.3d at 757 (citation omitted). In Board of Education v. Rowley, the Supreme Court announced a distinctive standard of review which federal courts must apply when reviewing an ALJ's decisions under IDEA:

> [T]he provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sounds educational policy for those school authorities which they review. The very importance with which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to these proceedings.

Rowley, 458 U.S. at 206. In short, the purpose of the "due weight" standard is to "prevent the court from imposing its own view of preferable educational methods on the states." Id.

Nonetheless, the deference afforded an ALJ's decision is qualified. The Third Circuit "has interpreted the Supreme Court's instruction in Rowley to require that a court consider – although not necessarily to accept – the administrative fact findings," D.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir. 1996), "[b]ut if the district court chooses to depart from the agency's ruling, it should provide some explanation for its departure." Carlisle Area Sch., 62 F.3d at 527.

The Third Circuit further defined the meaning of "due weight" and ruled that the proper standard of review of administrative decisions in IDEA cases is "modified *de novo.*" S.H., 336 F.3d at 270. As such, "a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.' Id. (quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001).

### III. DISCUSSION

The Plaintiffs are not seeking a determination of the appropriateness of the IEP offered by WHRSD at this time. The issue of the appropriateness of the IEP remains to be fully adjudicated by the ALJ. The sole issue of this appeal is whether the Plaintiffs are procedurally barred from seeking reimbursement for their unilateral private placement of M.B.

This Court, after conducting a thorough review of the record before it and applying appropriate qualified deference due to the ALJ's decision, finds that the Plaintiffs are not barred under IDEA or applicable case law from seeking reimbursement from WHRSD for their unilateral placement of M.B. at Middlebrook. As such, the Court overturns the portion of the ALJ's decision that prohibits the Plaintiffs from seeking reimbursement for M.B.'s unilateral placement for the 2003/04 and 2004/05 school years, grants summary judgment in favor of Plaintiffs, and remands the case back to the ALJ for a determination of whether or not WHRSD failed to offer M.B. a proper FAPE and whether M.B.'s parents acted in good faith with in their dealings with WHRSD that would entitle them to reimbursement for their daughter's unilateral

placement. See 20 U.S.C. § 1412(a)(10)(C)(ii).

In his decision to deny reimbursement for the 2003/04 and 2004/05 school years, the ALJ relied upon federal IDEA statutes which state, in part:

> If the parents of a child with a disability, <u>who previously received special education and related services under the authority of a public agency</u>, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). New Jersey, as a participating state, has enacted its own regulations which were also relied upon by the ALJ in his analysis. The governing state laws that set forth the rules regarding reimbursement for unilateral placement of a child by their parents specifically provides:

> If the parents of a student with a disability, <u>who previously received special education and related services from the district of residence</u>, enroll the student in a nonpublic school, an early childhood program, or approved private school for the disabled without the consent of or referral by the district board of education, an administrative law judge may require the district to reimburse the parents for the cost of that enrollment if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a court of competent jurisdiction or an administrative law judge according to N.J.A.C. 6A:14-6.5, even if it does not meet the standards that apply to the education provided by the district board of education.

N.J.A.C. 6A:14-2.10(b) (emphasis added).

It is undisputed by the parties that M.B. had received special education services from WTSD when attending kindergarten through third grade in the Warren Township public school

10

system. The dispute appears to arise out of the fact that children in the Warren Township public school system transition to the WHRSD upon reaching high school. While both of these institutions are public agencies that provide special education services to residents of M.B.'s district of residence, they are technically separate entities. This fact was deemed to be determinative in the ALJ's decision. The ALJ held that, although M.B. had received special education services from WTSD, she had never received such services through WHRSD. (ALJ Opinion at 14.) The ALJ reasoned that since M.B. had not previously recieved special education services from WHRSD, she had not met the threshold standard of receiving special education and public services from a "public agency" as defined in 20 U.S.C. § 1401(b). (Id.) Accordingly, the ALJ reasoned that there was no authority to reimburse the tuition expenses arising from the parent's unilateral placement of M.B. in a private school. (Id.)

Because M.B. did not previously receive any special education services from WHRSD, the ALJ found it "implicit in the language of 20 U.S.C. § 1412(a)(10)(C)(ii)" that her parents were not entitled to reimbursement from WHRSD for expenses arising from M.B.'s unilateral placement in a private school. (ALJ Opinion at 14.) Even though M.B. had previously received special education services from WTSD, the ALJ felt that this was not sufficient to meet the threshold requirement because WTSD and WHRSD are "separate and autonomous entities." (Id. at 13.)

This Court cannot find sufficient support in either the statutes or related caselaw to concur with the ALJ's interpretation and application of IDEA in this case. Under the plain

language of both 20 U.S.C. § 1412(a)(10)(C)(ii) and N.J.A.C. 6A:14-2.10(b), M.B.'s parents have met the threshold requirements to be entitled to seek reimbursement for their unilateral placement. WTSD is both a "public agency" as well as the agency charged with providing educational services in M.B.'s "district of residence." 20 U.S.C. § 1412(a)(10)(C)(ii), N.J.A.C. 6A:14-2.10(b). It is undisputed that M.B. has previously received special education services from WTSD. Accordingly, by previously receiving special education services from a public agency in her district of residence such as WTSD, M.B. has complied with the plain-language requirements of both the federal and state statutes to allow her parents to seek reimbursement for her unilateral placement at Maplebrook.

The ALJ has even acknowledged that, in some circumstances, adopting his interpretation of IDEA could lead to unacceptable results for children diagnosed with learning disabilities prior to reaching school-age. (ALJ Opinion at 7-9, 14.) As the district court in <u>Justin G. ex rel. Gene R. v. Board of Educ. Of Montgomery County</u> noted, children who are enrolled in special education programs before reaching school age should not be denied reimbursement under IDEA upon reaching school age simply because they were never enrolled in or receiving benefits from the public school district prior to seeking reimbursement because:

> [S]uch a construction of the IDEA would produce the absurd result of barring children from receiving a FAPE because their disabilities were detected before they reached school age. [Such a] disturbing interpretation would also place parents of such children in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement. The Supreme Court has expressly rejected saddling parents of disabled children with such a pyrrhic victory.

148 F.Supp.2d 576, 587 (D.Md. 2001) (citing <u>School Committee of Town of Burlington Mass. v.</u>

Dept. of Educ. Of the Commonwealth of Massachusetts, 471 U.S. 359, 370 (1985)).  A similar result was reached by the district court in E.W. v. School Board of Miami-Dade County Florida, where the Court noted that, although the school district was not responsible for providing children with a FAPE until they reach school age, where children are already enrolled in a private nursery school before reaching school age, their parents should not be prevented from seeking reimbursements "merely because they refused to place their child, even for a day, in a public school program found to be inappropriate."  307 F.Supp.2d 1363, 1370 (S.D.Fla. 2004).

     The ALJ qualifies his acknowledgment of this problem by stating that these concerns apply "only in the context of preschool aged children," and are not applicable to the present case. (ALJ Opinion at 14.)  This Court, however, does not agree with the ALJ in holding that this exception should be limited only to preschool aged children.  The interpretation of IDEA adopted by the ALJ in this case appears to create similarly undesirable results for students in M.B.'s position who are required to transition from one designated district to another as they move from grade school to high school.  If a child is evaluated and diagnosed with a learning disability in grammar school and appropriately placed in an outside placement as the only means of offering the child a meaningful FAPE, under the ALJ's interpretation of IDEA, as soon as that child reaches high-school age, they would have to be removed from their current placement, re-enrolled in the new designated high-school district, and receive services from that new district for some minimum period of time in order to maintain eligibility to seek reimbursement for an appropriate outside placement – regardless of the new districts' ability to provide an adequate or appropriate FAPE for the child.

Such a procedural requirement would deny these parents a vital avenue of statutory redress where the new district fails to offer their child an adequate FAPE because, regardless of any inadequacies of the IEP offered by the new district, parents would be required to enroll their child and receive services from the new district as a prerequisite for seeking reimbursement for an appropriate unilateral outside placement under 20 U.S.C. § 1412.  As Judge Posner in the Seventh Circuit noted:

> We cannot see what difference it makes if a state decides that the elementary school and the high school serving the same pool of kids shall be deemed to constitute separate school districts . . . We cannot see why such a decision should affect the rights created by federal statute, or why Congress would have countenanced a state's diminishing those rights simply by designating every public school a separate school district.  IDEA is a program of financial assistance to states conditioned on the states' complying with certain requirements of the Act, such as paying for the private education of disabled children in some instances. From the Act's standpoint, the state is an indivisible unit.  It must not be allowed to crawl out from under the Act's requirements – while retaining the federal money that it gets in exchange for submitting itself to those requirements – by multiplying the number of its school districts.  It would make no sense if, simply by dividing all its school districts in half and thus doubling their number, a state could reduce the expense to it of compliance with the conditions of IDEA without surrendering a penny of IDEA funds.

<u>Casey K. ex rel. Norman K. v. St. Anne Community High School Dist. No. 302</u>, 400 F.3d 508, 511-12 (7th Cir. 2005).  The ALJ's interpretation of IDEA in the present case places additional procedural burdens upon parents with children in M.B.'s situation who seek reimbursement for outside placements merely because the state has structured their local elementary and high school into different districts.  This Court agrees with Judge Posner's analysis in finding that such results would be contrary to the underlying purpose of IDEA.

This Court also cannot find support for the ALJ's interpretation under the intent of IDEA

14

and its related requirements.  The provisions at issue require that, in order to seek reimbursement for a unilateral placement of a child in a private school, the child must have "previously received 'special education and related services' while in the public school system (or perhaps those who at least timely requested such services while the child is in public school)."  Greenland School District v. Amy N., 358 F.3d 150, 159-60 (1st Cir. 2004).  The statutory provisions of 20 U.S.C. § 1412(a)(10)(C) clearly envision Congressional intent to require prior notice to a school district by a child's parents that their child is in need of special education before allowing the child to be unilaterally placed at a private school at that school district's expense.  Id. at 160.  This notice requirement gives the school an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate IEP, and demonstrate whether or not a FAPE can be provided in the public schools.  Id.

While M.B. had been recently enrolled in WHRSD, and never received special educational services from WHRSD prior to being placed at Maplebrook, her parents did nonetheless notify WHRSD that they would be seeking special education services for their daughter in March 2003 along with notice that they would be enrolling their daughter in the WHRSD in June 2003.  WHRSD did conduct an evaluation of M.B. in May and June 2003, and found her eligible for special education and related services.  WHRSD also was able to develop an IEP and present it to M.B.'s parents on July 2, 2003.  The fact that the district's completed IEP remains before the ALJ for a determination of whether or not WHRSD offered M.B. and appropriate FAPE shows that WHRSD was given adequate notice and opportunity to demonstrate whether or not they could offer M.B. a FAPE in the public school system.

Whether or not the IEP that WHRSD developed for M.B. offered her a proper FAPE, or if M.B.'s parents participated in the development of the IEP in good faith are both questions of fact which are still before the ALJ that will eventually determine whether or not M.B.'s parents are entitled to reimbursement for their daughter's unilateral placement.  For the reasons noted above, however, the fact that M.B. did not actually receive special education and related services from WHRSD should not procedurally bar her parents from seeking reimbursement from the school district for M.B.'s unilateral placement at Maplebrook.

## IV. CONCLUSION

As required by the standard, this Court has reviewed the evidence in the record, as well as the ALJ's assessment of the arguments raised by the parties and his findings based on the testimony and written exhibits before him.  Having done so, this Court finds, based on a preponderance of the evidence in the record, that the Plaintiffs have met its burden of proof to establish that they are not procedurally barred from seeking reimbursement for the unilateral placement of their daughter.  Plaintiffs' Motion is hereby **GRANTED**, and Defendant's Motion is hereby **DENIED**.  An appropriate form of order will be filed herewith.

Dated: January 5, 2006

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s Stanley R. Chesler　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Stanley R. Chesler, U.S.D.J.